PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
____ LODGED
____ RECEIVED

**November 14, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>BEVERLY STUMPF LAVY,<br><br>        Debtor. | Case No. 07-41399 |
| BEVERLY STUMPF LAVY,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>        Defendant. | Adversary No. 07-4120<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on November 5, 2008. Beverly Stumpf Lavy (Plaintiff), in accordance with her complaint, seeks to have the debt owed to the United States Department of Education (Defendant) declared discharged pursuant to 11 U.S.C. § 523(a)(8).[1] At the conclusion of the trial, the Court took this case under advisement. This Memorandum

---

[1] Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by BAPCPA, Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 1

Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

# I

## FINDINGS OF FACT

On April 5, 1999, the Plaintiff voluntarily signed a Federal Direct Consolidation Loan Application and Promissory Note (Consolidation Loan).  The Consolidation Loan was disbursed in two disbursements, both on August 13, 1999.  The first disbursement was in the amount of $38,562.98, with a fixed interest rate of 7.75 percent.  As of March 26, 2008, the outstanding balance on this disbursement was $51,738.99.  The second disbursement was in the amount of $41,732.62, also with a fixed interest rate of 7.75 percent.  As of March 26, 2008, the outstanding balance on this disbursement was $69,396.44.  Plaintiff's Consolidation Loan had a combined outstanding balance of $121,135.43 on March 26, 2008.

The Plaintiff is currently scheduled to make payments on her Consolidation Loan under the Standard Repayment Plan, which carries a payment of $1,406.35 per month.  The Plaintiff has the option to repay her Consolidation Loan under the four basic repayment plans: Standard, Extended, Graduated, and Income Contingent.

Based on a household adjusted gross income of $0.00 and family size of one, at the current fixed interest rate of 7.75 percent, Plaintiff's estimated monthly payment under the available plans is as follows:

| Repayment Plan | Monthly Payment | Term of Repayment |
|---|---|---|
| Income Contingent | 0.00 | 25 years |
| Standard | 1,406.35 | 10 years |
| Extended | 867.83 | 30 years |
| Graduated* | 782.33 | 12-30 years** |

*Increasing gradually every two (2) years.
**Depending on the amount owed

MEMORANDUM DECISION - 2

Plaintiff has paid approximately $300 toward her Consolidation Loan. Plaintiff has used approximately 36 months of economic hardship deferment, 15 months of unemployment deferment, and 53 months of forbearance. Thus, with the consent of the Defendant, her loans have been deferred for a total of 104 months (approximately 8-1/2 years).

Plaintiff graduated from Ohio State University in 1970, with a Bachelor of Science in education. The Plaintiff later attended and graduated from Wright State University in 1978, with a Masters Degree in guidance and counseling.

At age 47, the Plaintiff enrolled in law school at Gonzaga University. She attended Gonzaga Law School and Lewis and Clark Law School, both private law schools with annual tuitions between $12,000 and $15,000. The Plaintiff funded her law school tuition with student loans. Graduating in 1998, the Plaintiff passed the Washington State Bar examination that same year. The Plaintiff remains licensed to practice law in the State of Washington.

The Plaintiff taught high school for approximately seven years. After receiving her masters, she then worked as a guidance counselor for 17 years and earned upwards of $30,000 per year. Plaintiff was certified by the State of Washington as a teacher and guidance counselor. These certificates have expired, but she has a temporary certificate to teach. The Plaintiff may seek recertification after completing approximately 15 hours of classes, being fingerprinted, and paying a $200 fee.

After obtaining her license to practice law, the Plaintiff worked as a prosecuting attorney and assistant city attorney in Centralia, Washington; for a private law firm handling the indigent defense for domestic violence cases and all misdemeanors on contract with Thurston County and the City of Lacey, Washington; for a private attorney in Clark County,

Washington doing employment law, civil cases, and family law; and handled the juvenile public defense contract for Clark County Superior Court.

While practicing law, the Plaintiff's annual adjusted gross income was:

| Year | Amount |
|------|--------|
| 2000 | 28,853 |
| 2001 | 14,780 |
| 2002 | 19,371 |
| 2003 | 22,500 |
| 2004 | 17,914 |
| 2005 | 57,674 |
| 2006 | 51,291 |

The Plaintiff continued to work with the juvenile public defense contract for Clark County Superior Court until February, 2007. Over the last two years, she has worked primarily taking care of her grandchildren earning approximately $7,445 in 2007 and $5,000 in 2008.

On January 18, 2006, Plaintiff suffered a large, acute, anterior myocardial infarction (heart attack) and underwent surgery where she had two stents placed in her heart. On January 22, 2006, the Plaintiff was discharged from the hospital. On January 25, 2006, the Plaintiff was cleared to return to work for half days and to return to work without restrictions in two weeks. Physicians cleared the Plaintiff for work as of September 30, 2006.

The Plaintiff had several visits to the emergency room between February, 2006, and January, 2008, but on each occasion electrocardiogram, chest x-rays, and enzyme tests were negative. The Plaintiff's medical records indicate that her condition has somewhat stabilized since January, 2006. In October, 2007, the Plaintiff's physician declined to sign a form for long-term disability for student loan forgiveness and advised her to return to work at a lower stress-type job. The Court took under advisement, however, the admissibility of a subsequent August 21, 2008, statement from the same physician indicating that the myocardial damage

MEMORANDUM DECISION - 4

from her heart attack is "permanent and irreversible" and that she is "partially disabled due to heart disease." The physician further stated that it was her opinion that the Plaintiff is "unlikely to be able to sustain full employment due to symptoms from her coronary artery disease and congestive heart failure." Plaintiff's Exhibit 1. The Court has admitted the exhibit into evidence, but discounts the physician's statements due to earlier conflicting statements given by the treating physician. The Court also discounts the August 21, 2008 statement because it was not disclosed prior to trial to opposing counsel. The Defendant thus was not granted an opportunity to depose the Plaintiff's physician regarding this second seemingly conflicting statement.

In March, 2008, the Plaintiff underwent a heart catheterization. There was no aortic stenosis and no significant in-stent disease found. On April 4, 2008, the Plaintiff reported to her physician that she had some improvement in symptoms since undergoing the catheterization in March. She reported that she had no chest pain, palpitations, syncope or presyncope and there were no signs or symptoms of congestive heart failure. The Plaintiff also reported that she believed that her exercise tolerance had slowly improved over the month since knowing that her coronary status was unchanged. The Plaintiff takes six daily medications.

On April 14, 2008, the Plaintiff filed an application for Social Security disability benefits with the Social Security Administration (SSA). On June 5, 2008, Dale Thuline, M.D., completed a Residual Functional Capacity Assessment of the Plaintiff's abilities in connection with her application for Social Security disability payments. On June 10, 2008, the SSA concluded that the Plaintiff was not disabled and that her condition is not severe enough to keep her from working.

MEMORANDUM DECISION - 5

On October 16, 2008, the Court entered an order as to the Plaintiff's and Defendant's stipulation as to the admissibility of Stan Owings' (Owings) August 1, 2008, expert witness report in lieu of live testimony at trial. Owings is a Board Certified Vocational Expert and Rehabilitation Counselor. Owings stated that the type of public defense work that Plaintiff was previously involved in "is known to be fast paced; to require work on a high volume of cases; and to be contentious." Defendant's Exhibit 3. He further stated that there were less stressful areas of legal work available to the Plaintiff, such as legal research, legal writing and certain areas of practice. Owings indicated that there are also non-attorney positions in the legal field for which Plaintiff is qualified, such as paralegal, legal assistant, or legal secretary positions that are all less hectic and stressful than her former position as a public defender.

Owings further stated that there are a significant number of attorney, paralegal and legal assistant positions in the State of Washington, and job openings occur on a reasonably constant basis. Owings found that the Plaintiff should earn the average wage paid attorneys, paralegals, or legal assistants. The average earnings of paralegals and legal assistants is $47,632 per year in the State of Washington ($52,915 per year in the Seattle area; $36,608 per year in Clark County).

**II**

**CONCLUSIONS OF LAW**

The burden of proof under § 523(a)(8) is initially on the lender to establish the existence of the debt, and that the debt is owed to, insured, or guaranteed by a governmental agency or nonprofit institution, or was incurred for an obligation to repay funds received as an educational benefit, scholarship or stipend. There is no dispute that this initial burden has been met. The burden of proof then shifts to the debtor to establish undue hardship within the

MEMORANDUM DECISION - 6

meaning of § 523(a)(8). <u>Raymond v. Nw. Educ. Loan Ass'n. (In re Raymond)</u>, 169 B.R. 67, 69-70 (Bankr. W.D. Wash. 1994) (citing <u>The Cadle Co. v. Webb (In re Webb)</u>, 132 B.R. 199, 201 (Bankr. M.D. Fla. 1991)).

There is no statutory definition of "undue hardship." In the case of <u>Pena v. United Student Aid Funds, Inc. (In re Pena)</u>, 155 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit Court of Appeals (Ninth Circuit) adopted a three-prong test set forth in <u>Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)</u>, 831 F.2d 395, 396 (2d Cir. 1987). Under this standard, the Debtor must establish

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [the debtor] and [any] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

<u>Brunner</u>, 831 F.2d at 396.

Under the <u>Brunner</u> test, "the burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted." <u>Rifino v. United States (In re Rifino)</u>, 245 F.3d 1083, 1087-88 (9th Cir. 2001) (citing <u>In re Faish</u>, 72 F.3d 298, 306 (3d Cir. 1995)). "If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" <u>Rifino</u>, 245 F.3d at 1088 (quoting <u>Faish</u>, 72 F.3d at 306).

At the commencement of the trial, the Plaintiff and the Defendant stipulated that the Defendant has met the first and third prong of the <u>Brunner</u> test by a preponderance of the evidence. Therefore, neither party put into evidence or argued the first or third <u>Brunner</u> prongs. Accordingly, the Court's focus in preparing this Memorandum Decision is entirely on the second prong of the <u>Brunner</u> test.

The second prong of the <u>Brunner</u> test focuses on future finances and requires the Plaintiff to establish that additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period. The "additional circumstances" under the second prong need be exceptional only in that they "'demonstrate insurmountable barriers'" to the debtor's ability to repay the student loan. <u>Nys v. Educ. Credit Mgmt. Corp. (In re Nys)</u>, 446 F.3d 938, 946 (9th Cir. 2006) (quoting <u>Nys v. Educ. Credit Mgmt. Corp. (In re Nys)</u>, 308 B.R. 436, 444 (9th Cir. BAP 2004)). Applying this standard, the Plaintiff must establish "by a preponderance of the evidence that, for a substantial portion of the loan repayment period, [she] would not be able to maintain even a 'minimal' standard of living if" she was required to pay the full amount of the student loan debt. <u>Carnduff v. U.S. Dep't of Educ. (In re Carnduff)</u>, 367 B.R. 120, 129 (9th Cir. BAP 2007).

The Ninth Circuit in <u>Nys</u> set fourth a non-exhaustive list of additional factors that a bankruptcy court may consider. <u>Nys</u>, 446 F.3d at 947. Taking these factor into consideration, a preponderance of the evidence indicates that the Plaintiff has physical limitations on the type of work she can perform due to her heart condition. In reviewing the medical records and testimony, any stressful occupation may be limited by her partial physical disability, primarily related to coronary artery disease and past congestive heart failure. The Court concludes that the most credible evidence suggests she would be unable to return to any type of attorney position, although it is possible that she could be employed as a paralegal, teacher or guidance counselor, once she is re-certified. The Plaintiff is a well-educated, articulate, unmarried woman who is not required to care for others. She is 60 years of age and plans on retiring in five years or less. The Plaintiff has virtually no assets to use to repay the student loans, does not live a lavish lifestyle and does not have discretionary

MEMORANDUM DECISION - 8

income available to pay toward the student loans. The Plaintiff is in the process of re-certifying as a teacher or guidance counselor and has unsuccessfully applied for several positions. The Court does not find persuasive the declaration of the Defendant's expert witness that the Plaintiff could find, at age 60 and considering her physical condition, an attorney position at a smaller firm that handles lower volume of work that would be less stressful and allow her to repay her student loan debt in full. Attorney positions are inherently stressful due to client or self-imposed time limits, billable hour requirements and the complex nature of the work. The Court finds credible the Plaintiff's statements that she could not return to work as an attorney without endangering her health.

The student loan debt owed by the Plaintiff was $121,135.43 as of March, 2008. Since her heart attack, she has been unable to return full-time to her former attorney position and has worked caring for her young grandchildren, earning minimal income. The Court concludes that a preponderance of the evidence indicates that although she is employable, the Plaintiff has met her burden of proof in establishing that for a substantial portion of the loan repayment period, she would not be able to maintain even a minimal standard of living if required to pay the full amount of her student loan debt, primarily due to her age and physical condition. Accordingly, the Plaintiff has met all three parts of the Brunner test. The Court, however, also concludes that the Plaintiff is able to work on a full-time basis at a less stressful position, and maintain a minimal standard of living while making payments on her outstanding student loans. She is not concluded to have the income to pay her outstanding student loan in full. The Court will therefore use its equitable power to partially discharge her student loan in accordance with Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1173

MEMORANDUM DECISION - 9

(9th Cir. 2003). Unfortunately, <u>Saxman</u> provides little guidance on the method to utilize in crafting a partial discharge.

In reviewing the amount of the Plaintiff's student loan obligation outstanding, the physical restrictions on future employment, and her limited time to repay the debt prior to retirement, assuming retirement at age 65 to 67, the Court concludes that the sum of $38,562.98, which is the amount of the first loan disbursement, without interest, should be declared to be non-dischargeable. The interest on the first loan disbursement, and the second student loan disbursement and interest shall be discharged. The principal amount of the debt will become due and owing as of the filing date of the Order Partially Discharging Student Loan Debt and bear interest at the contract rate of 7.75 percent. <u>See</u> <u>Sequeira v. Sallie Mae Serv. Corp. (In re Sequeira)</u>, 278 B.R. 861, 866-67 (Bankr. D. Or. 2001). This non-dischargeable amount was arrived at after taking into consideration the fact that the Plaintiff is employable as a teacher, paralegal or counselor, and could realistically earn between $30,000 and $45,000 per year. It also takes into consideration that the Plaintiff has no assets to distribute to the Defendant, will need to provide housing, transportation and living expenses for herself, and has a limited amount of time to repay the debt prior to retirement.

DATED:     November 14, 2008

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 10